## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KINGVISION PAY-PER-VIEW, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 10-40243-FDS |
| PATRICK A. PATTON and ) | |
| LANDMARK PUB, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S
## MOTION FOR DEFAULT JUDGMENT

**SAYLOR, J.**

This case involves allegations of cable television signal piracy.  Plaintiff Kingvision Pay-Per-View, Ltd. ("Kingvision"), a programming distributor, has filed a civil action against Patrick A. Patton and Landmark Pub, Inc.  The complaint alleges that defendants unlawfully obtained access to programming for a boxing match in the exclusive control of Kingvision.  Both defendants have defaulted; the principal issue is ascertaining the amount of damages to be assessed.

The Court must first determine whether Kingvision is entitled to recover under both 47 U.S.C. § 553, which applies to the theft of "cable" transmissions, and 47 U.S.C. § 605, which applies to the theft of "radio" transmissions.  The latter statute provides for greater potential recovery of damages and recovery of costs and attorney's fees as of right.  The Court must then consider the amount of compensatory damages (either statutory or actual) to be awarded and the extent to which enhanced damages, attorney's fees, costs, and injunctive relief should be awarded.

For the reasons set forth below, the Court concludes that § 553 applies to this case, but not § 605; that cable piracy by a commercial institution is an unfair business practice under Mass. Gen. Law ch. 93A; and that, in the context of cable piracy, claims of common-law conversion are preempted by the Federal Communications Act and the Copyright Act.  The Court also finds that plaintiff is entitled to an award of costs and reasonable attorney's fees.

I.     **Factual Background**

The following facts are taken as true.[1]

Kingvision is a programming distributor that was granted exclusive nationwide commercial distribution rights to "Bring on the Titans:  Roy Jones, Jr. v. Felix Trinidad Light Heavyweight Championship fight Program" ("the Program").  (Compl. ¶ 12).  Kingvision entered into sublicensing agreements with various commercial entities.  (*Id.* at ¶ 13).

The signals were transmitted by closed circuit.  (*Id.* at ¶ 12).  On January 19, 2008, defendants Patrick A. Patton and Landmark Pub Inc., illegally displayed the Program at the Emerald Isle Pub, located at 49 Millbury Street, Worcester, Massachusetts.  (*Id.* at 10, 12, 15). According to Kingvision, these signal interceptions were done "willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." (*Id.* at 16).  Kingvision has suggested multiple ways that Patton and Landmark Pub Inc. could have gained unauthorized access to the programming.  (King Aff. ¶ 9).

---

[1]  Because defendants have defaulted for failure to plead or otherwise defend, they are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which the damages will be calculated." *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002), *quoting Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999).  Before entering a default judgment, the Court may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency. *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002); *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992).

The Emerald Isle did not charge a cover to enter the restaurant.  (McDonnold Aff. 1).
The Program was displayed on two of the pub's four televisions—both with 36" screens, located above the bar.  (*Id.*).  The number of patrons in the establishment varied from eleven to thirteen. (*Id.*).  The capacity of the Emerald Isle was approximately 50 people.  (*Id.*).

Kingvision asserted four counts in their complaint:  (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of Mass. Gen. Law 93A §§ 2, 11.

## II.     Procedural History

This case was filed on December 3, 2010.  Defendants failed to appear or otherwise defend.  On April 29, 2011, default was entered against defendants.  Kingvision seeks a default judgment award in the amount of $110,000 and attorneys' fees and costs.

## III.    Analysis

### A.     Applicability of Sections 553 and 605

Plaintiff contends that it is entitled to recover damages under both 47 U.S.C. § 553 and 47 U.S.C. § 605.[2]  Although §§ 553 and 605 are very similar, § 605 allows for a greater potential recovery.  Furthermore, § 605 mandates that the defendant pay costs and attorneys' fees; such an award is discretionary under § 553.  The Court must therefore examine the applicability of both § 553 and § 605.

Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized

---

[2] Specifically, the motion for default judgment seeks the following relief:  statutory damages in the amount of $110,000 for violations of 47 U.S.C. § 553 and 47 U.S.C. § 605 ($10,000 for the violation with an additional $100,000 due to the willful nature of the violation); and attorney's fees and costs in the amount specified in an attached affidavit.

to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).  There is no question that defendants' conduct subjects them to liability under § 553.

Section 605 provides that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."  47 U.S.C. § 605(a).  Section 605 thus prohibits the unauthorized interception or reception of *radio* communications.

The First Circuit has held that § 605 does not apply to the theft of cable communications. *Charter Commc'ns Entm't I v. Burdulis*, 460 F.3d 168, 172 (1st Cir. 2006) ("the statutory text . . . make[s it] clear that § 605 is not to apply to signals delivered by wire over a cable network."), *aff'g* 367 F. Supp. 2d 16 (D. Mass. 2005).  The complaint here alleges that defendants intercepted the signal to the cable pay-per-view programming that plaintiff was sublicensing.  (Compl. ¶ 12-15; King Aff. ¶¶ 3, 5-7).  Thus, because defendants were intercepting cable communications, § 605 does not apply, and plaintiff cannot recover damages under that section.

**B.     Computation of Damages Under Section 553**

Section 553 states as follows:

[d]amages awarded by any court under this section shall be computed in accordance with either of the following clauses: (i) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing actual damages . . . ; or (ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

§ 553(3)(A).  Where the violations perpetrated by defendants were "committed willfully and for

4

purposes of commercial advantage or private financial gain, the court in its discretion may

increase the award of damages, whether actual or statutory under subparagraph (A), by an

amount of not more than $50,000." § 553(c)(3)(B).

### 1.    Amount of Compensatory Damages

Plaintiff has demonstrated that there was a violation of § 553 at the Emerald Isle Pub.  The

maximum amount that a plaintiff can recover under § 553(3)(A)(ii) is $10,000 for all the

violations outlined in the complaint, not for each violation.  *Burdulis*, 460 F.3d at 178.  Here, the

violation, in the commercial context, was ordinary in scale—there were no more than thirteen

people inside the establishment during the violation and the Program was playing on at most two

televisions.  Therefore, this Court awards plaintiff $700 in actual damages—the amount

Kingvision would have received had defendants paid the sublicensing fee.

### 2.    Enhanced Damages

In addition to compensatory damages, plaintiff seeks enhanced damages under the statute

for a "willful" violation made "for purposes of commercial advantage or private financial gain."

The term "willful" is not defined in the statute.  In the context of alleged Cable Act violations, it

means "a disregard for the governing statute and an indifference to its requirements."  *Charter*

*Commc'ns Entm't I v. Burdulis*, 367 F. Supp. 2d 16, 29 (D. Mass. 2005) (quoting *Cable/Home*

*Commc'n Corp. v. Network Prods., Inc.* 902 F.2d 829, 851 (11th Cir. 1990) (internal quotations

omitted)).  Courts generally have been imprecise in assessing willfulness, often assuming it rather

than finding it in any reasoned way.  This is most likely due to the nature of the violation:

conducting cable piracy requires affirmative illegal acts.  However, as this Court has previously

noted, there must be a distinction between intercepting a signal willfully and non-willfully,

otherwise it would render the statutory language meaningless. *Burdulis*, 367 F. Supp. 2d at 30, 30 n.17.

Some courts have gone further and found that a default by a defendant is sufficient to demonstrate willfulness. *See, e.g., Joe Hand Promos., Inc. v. Salinetti*, 148 F. Supp. 2d 119, 122 (D. Mass. 2001) (citing *Time Warner Cable of N.Y.C. v. Olmo*, 977 F. Supp. 585, 589 (S.D.N.Y. 1997) ("[T]he court may draw an inference of wilfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.")); *see also Cablevision Sys. N.Y.C. Corp. v. Rosa*, 2002 WL 1446942, at *5 (S.D.N.Y. April 3, 2002) (concluding defendant's default, among other things, demonstrated a willful disregard for the Cable Act); *Century ML-Cable Corp. v. Diaz*, 39 F. Supp. 2d 121, 125 (D.P.R. 1999) ("[D]efendant's civil contempt and default alone may be viewed as evidence of willfulness."); *Cablevision Sys. N.Y.C. Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) ("[The] default itself could further be viewed as evidence of willfulness."). *But see Kingvision Pay-Per-View, Ltd. v. Langthorne*, 2001 WL 1609366, at *1 (D. Mass. Nov. 28, 2001) (inferring willfulness from a defendant's default alone is "extremely problematic") (citing *Entm't by J & J, Inc. v. Perez,* 2000 WL 890819, at *2 (N.D. Cal. June 30, 2000) (holding that the mere assertion that a defaulted defendant acted willfully was insufficient to justify enhanced damages)); *Kingvision Pay–Per–View, Ltd. v. Arias,* 2000 WL 20973, at *2 (N.D. Cal. Jan. 7, 2000) (concluding that allegations of willfulness alone were insufficient to support finding of willfulness against defaulted defendant). This Court concludes that the mere act of default does not establish willfulness. *Burdulis*, 367 F. Supp. 2d at 30.

Plaintiff states that its signal programming cannot be intercepted innocently, and therefore

in this case it must have been done intentionally.  (King Aff. ¶ 9).  It then lists a number of ways that the signal *could* have been intercepted.  (*Id.*).[3]  Plaintiff does not, however, specifically state how the signal was *actually* intercepted.

Plaintiff's position is certainly plausible on its face.[4]  As noted, however, that position, if accepted, would appear to lead to a finding of willfulness in every single case.  That, in turn, would render the statutory distinction between willful and non-willful violations entirely meaningless.

This issue arises in the setting of a default judgment, and without a full factual record, making further analysis difficult.[5]  For present purposes, and in the absence of any other evidence, the Court will accept the factual representation of plaintiff that the signals could only have been intercepted deliberately, and therefore "willfully" within the meaning of the statute.  Whether that

---

[3] Plaintiff states that its programming signal could be intercepted by (1) use of a "blackbox," "hotbox," or "pancake box" that descrambles the reception of a pay-per-view broadcast when installed on a cable TV line; (2) use of a "smartcard," "test card," or "programming card" that descrambles the reception of a pay-per-view broadcast when installed on a DSS satellite; (3) where a commercial establishment misrepresents itself as a residential property to allow purchase of pay-per-view programming at the residential rate; (4) use of cable splice or drop; and (5) the purpose of other illegal unencryption devices and the purchase of illegal satellite authorization codes.  (King Aff. ¶ 9).

[4] Defendants are deemed to have admitted the factual allegations in the complaint.  However, the complaint simply tracks language within § 553, alleging that "[s]aid unauthorized interception . . . by each of the Defendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain."  (Compl. ¶ 16).  Merely stating that something was done "willfully" is a legal conclusion and, therefore, is not deemed admitted for the purposes of default.  10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE § 2688, at 63 (3d ed. 1998); *see also DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[5] Normally, for an interception to be found willful, there must be some factual specificity as to how defendants intercepted the signal.  *E.g.*, *Comcast of S. New England, Inc. v. Kacavas*, 2007 WL 4556685, at *3 (D. Mass. Dec. 18, 2007) (defendant "knowing that he could not receive premium cable content, voluntarily and intentionally undertook to modify his cable box so that they would unscramble content that he was clearly blocked from receiving."); *Mountain Cable Co. v. Choquette*, 53 F. Supp. 2d 107, 111, 113 (D. Mass. 1999) (noting evidence that there was scrambling equipment in defendant's basement, the court found defendant acted willfully).

argument will suffice in different circumstances is a question for another day.

The next issue is whether the violation was made "for purposes of commercial advantage or private financial gain."  Because the intercepted signal was shown at a restaurant as an inducement for patrons to purchase food and beverages, the Court has no difficulty making the requisite finding.

Accordingly, the Court finds that the violation was "willful" and was "made for purposes of commercial advantage or private financial gain."  It therefore awards additional enhanced damages in the amount of $700, or equal to the actual damages sustained.

### 3.     Costs

Section 553(c)(2)(C) authorizes the court in its discretion to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  Here, Kingvision has requested investigative costs and the filing and service costs.  Accordingly, Kingvision will be awarded costs against Patton and Landmark Pub, Inc. in the amount of $389.71.

### 4.     Attorney's Fees

Section 553(c)(2)(C) also authorizes the court in its discretion to award reasonable attorneys' fees to a prevailing party.  "Given the burden borne by cable operators to protect and redress their statutory rights through civil actions from what is also criminal conduct," it is appropriate to award attorneys' fees in these cases.  *Diaz*, 39 F. Supp. 2d at 126.

The First Circuit follows "the 'lodestar' approach, which calculates reasonable attorneys' fees as 'the number of hours reasonably expended multiplied by a reasonable hourly rate.'" *Comcast of Mass. I, Inc. v. Naranjo*, 303 F. Supp. 2d 43, 50 (D. Mass. 2005) (quoting *Furtado v.*

*Bishop*, 635 F.2d 915, 920 (1st Cir. 1980)).  A reasonable hourly rate is measured according to the prevailing market rates in the relevant community and by considering factors such as "'the type of work performed, who performed it, the expertise that is required, and when it was undertaken.'" *Choquette*, 53 F. Supp. 2d at 114 (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951 (1st Cir. 1984)).  The Court may adjust the lodestar upward or downward to reflect other factors, including the result obtained.  *Id.* at 114-15 (citing *Grendel's Den*, 749 F.2d at 951).  "The First Circuit considers three meanings of the term 'results obtained':  plaintiff's success on each claim, relief actually achieved, and the societal importance of the right which has been vindicated."  *Id.*

In the present case, plaintiff seeks $1,250 in legal fees, representing five hours of time by attorney Patricia Szumowski at a rate of $250.  This lawsuit is essentially identical to multiple other recent lawsuits in this and other district courts, including California and New York.  One would expect that the first case that was investigated, researched, and filed would bear the most significant legal expenses, and that each succeeding case would involve substantially less effort by the attorneys.  In addition, plaintiff requested relief under 47 U.S.C. § 605, which does not apply to cable piracy; arguably, the attorneys' costs incurred pursuant to those allegations should not be allowed.  In light of all of this, the Court will not award the full requested amount of five hours. Instead, attorney's fees in the amount of $750, representing three hours' work at $250, is reasonable under the circumstances and will be awarded against defendants.

### C.    Mass Gen. Laws ch. 93A § 11

Plaintiff seeks damages pursuant to Mass. Gen. Laws ch. 93A § 11 for unfair and deceptive business practices.  Chapter 93A is not preempted by federal communications law.

*Quincy Cablesystems, Inc. v. Sully's Bar*, 684 F. Supp. 1138, 1142 (D. Mass. 1988).  Therefore,

a defendant can be liable under both 47 U.S.C. § 553 and ch. 93A § 11.

   In *Quincy Cablesystems, Inc. v. Sully's Bar*, the court found that the interception of the

video signal of a sports program by a commercial establishments qualified as an unfair business

practice within the meaning of ch. 93A.  *Id.* at 1143.  Because the facts in this case are directly

analogous to *Sully's Bar*, this Court finds that defendants violated ch. 93A.  Chapter 93A allows

the court to double and triple damages should the violation be willful, and permits recovery of

attorneys' fees and costs.  Mass. Gen. Laws ch. 93A § 11 (2006).  Any such award here,

however, would simply duplicate the awards previously made, and therefore will not be separately

awarded.

###    D.    Conversion

   Plaintiff also contends that it is entitled to damages for conversion.  The First Circuit has

yet to decide whether state law claims for conversion are preempted by the Federal

Communications Act ("FCA").  However, the Fifth Circuit has found that because applying

common-law conversion in these cable piracy cases would result in 50 separate standards to solve

a national problem, the FCA preempts such claims.  *See Prostar v. Massachi*, 239 F.3d 669, 676-

77 (5th Cir. 2001).  Moreover, in the context of FCA claims, the interests protected by

conversion are more analogous to those protected by the Copyright Act.  *See id.* at 677 ("The

unauthorized access and retransmission of cable broadcasting, which the FCA prohibits, does not

actually deprive the licensee of its license.  Whereas conversion requires the wrongful deprivation

of one's possession of property, the Copyright Act provides for liability when mere copying

occurs, rendering it a more appropriate analogue to the FCA."); *see also Quincy Cablesystems,*

*Inc. v. Sully's Bar*, 650, F. Supp. 838, 849-50 (D. Mass. 1986) ("The elements in plaintiff's action for conversion involve elements that would not establish qualitatively different conduct by the defendants than the elements for an action under the Copyright Act . . . . Plaintiff's conversion action is thus preempted.").  Because the Copyright Act preempts the claim of conversion in the context of cable piracy, plaintiff is not entitled to damages for conversion.

**IV.**    **Conclusion**

For the reasons stated above, the Court awards Kingvision the following damages against Patton and Landmark Pub, Inc.:

1.    Compensatory damages in the amount of $700;

2.    Damages for a "willful" violation in the amount of $700;

3.    Costs in the amount of $389.71; and

4.    Attorneys' fees in the amount of $750,

for a total of $2,539.71.  The clerk is directed to enter judgment for plaintiff in that amount, with prejudgment interest as provided by law on the damages awards.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: October 25, 2011